## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

ADAM BARRETT,
STEPHEN KENFIELD,
MICHAEL MORELOCK, and
THE CITY AND COUNTY OF DENVER,

    Appellants,

    v.

NICK LYNCH,

    Appellee.

Case No. 12-1222

On Appeal from the United States District Court for the District of Colorado
The Honorable Judge R. Brooke Jackson, D.C. No. 11-cv-01120-RBJ-MEH

## APPELLANT'S OPENING BRIEF

Respectfully submitted,

WENDY J. SHEA
STUART SHAPIRO
Assistant City Attorney
Office of City Attorney, Litigation Section
201 West Colfax Avenue, Dept. 1108
Denver, CO 80202-5332
Telephone: (720) 913-3112

DOUGLAS JEWELL, ESQ.
Bruno, Colin, Jewell & Lowe, P.C.
1999 Broadway, Suite 3100
Denver, CO 80202
Telephone: 303-831-1099

REID J. ELKUS, ESQ.
Elkus, Sisson & Rosenstein, P.C.
501 S. Cherry Street, Suite 920
Denver, CO 80264
Telephone: 303-567-7981

## ORAL ARGUMENT IS REQUESTED

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF RELATED CASES ....................................................vi

I.     JURISDICTIONAL STATEMENT ...............................................1

II.    ISSUES PRESENTED FOR REVIEW ..........................................2

III.   STATEMENT OF THE CASE .....................................................2

IV.    STATEMENT OF FACTS ...........................................................5

V.     SUMMARY OF ARGUMENT....................................................11

VI.    ARGUMENT............................................................................13

       A.     Standard of Review ..........................................................13

       B.     The District Court Erred by Finding that Lynch met his Burden of
              Presenting Facts Sufficient to Show that the Officers Violated his
              Constitutional Right of Access to the Courts ......................................15

              1.     The evidence is not sufficient to demonstrate Barrett,
                     Morelock or Kenfield personally participated in an
                     intentional cover-up ..................................................17

                     a.     The evidence does not show an intentional cover-up at
                            the time of Lynch's arrest..............................................20

                     b.     The evidence does not show an intentional cover-up
                            during the IA investigation .............................................25

              2.     Lynch has not demonstrated that Barrett, Morelock, or
                     Kenfield actually interfered with his right of access to the
                     courts ........................................................................28

       3.     No Evidence Exists to Support Lynch's Conspiracy Claim.....30

    C.    Lynch's Failure to Show the Law was Clearly Established also Requires Reversal of the District Court's Order.................................31

    D.    Denver is also Entitled to Summary Judgment on Lynch's Municipal Liability Claim..................................................................36

VII.   CONCLUSION................................................................................36

VIII.  STATEMENT REGARDING ORAL ARGUMENT ...................37

CERTIFICATE OF COMPLIANCE......................................................39

CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS ......................................................................................40

CERTIFICATE OF SERVICE ..............................................................41

ATTACHMENTS (Appended to End of Brief)

Exhibit 1–  October 5, 2010 Order on Defendants' Motion for Summary Judgment in Civil Action No. 09-cv-00405-JLK ("*Lynch I*")

Exhibit 2 –  Transcript of Court's Ruling on Defendants' Rule 50 Motion in Civil Action No. Case No. 09-cv-00405-JLK ("*Lynch I*")

Exhibit 3 –  Transcript of February 16, 2012 Order denying Motion to Dismiss

Exhibit 4 –  May 24, 2012 Order on Defendants' Motion for Summary Judgment

## TABLE OF AUTHORITIES

### Cases

*Bd. of County Comm'rs v. Brown*, 520 U.S. 397 (1997) .........................................36

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)..............................................31

*Bell v. City of Milwaukee*,746 F.2d 1205 (7th Cir. 1984)................................. 27, 34

*Bones v. Honeywell Int'l Inc.*, 366 F.3d 869 (10th Cir. 2004)................................19

*Bounds v. Smith*, 430 U.S. 817, 822 (1977)...........................................................28

*Camreta v. Greene*, -- U.S. --. 131 S.Ct. 2020 (2011)..............................................14

*Christensen v. Ward*, 916 F.2d 1462 (10th Cir. 1990) ..................................... 28, 29

*Christopher v. Harbury*, 536 U.S. 403 (2002)...................................... 15, 16, 18, 28

*Cortez v. McCauley*, 478 F.3d 1108 (10th Cir. 2007) ........................................1, 13

*Doe v. Schneider*, 443 F. Supp. 780 (D. Kan. 1978) ....................................... 29, 30

*Donahue v. Hoey*, 109 Fed. Appx. 340 (10th Cir. 2004)........................... 17, 18, 34

*Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008) ..................................... 18, 32

*Foster v. City of Jackson*, 28 F.3d 425 (5th Cir. 1994) ..........................................35

*Hope v. Pelzer*, 536 U.S. 730 (2002) .....................................................................32

*Hunt v. Bennett*, 17 F.3d 1263 (10th Cir. 1994) ....................................................31

*Jenkins v. Wood*, 81 F.3d 988 (10th Cir. 1996) .............................................. 17, 18

*Jennings v. City of Stillwater*, 383 F.3d 1199 (10th Cir. 2004)............ 15, 16, 17, 33

*Lewis v. Casey*, 518 U.S. 343 (1996).......................................................................29

*Lyons v. Xenia*, 417 F.3d 565 (6th Cir. 2005)..........................................................14

*Marcus v. McCollum*, 394 F.3d 813 (10th Cir. 2004) ............................................19

*Martinez v. Beggs*, 563 F.3d 1082 (10th Cir. 2009) ...............................................13

*McKay v. Hammock*, 730 F.2d 1367 (10th Cir. 1984)............................................15

*Mecham v. Frazier*, 500 F.3d 1200 (10th Cir. 2007)..............................................34

*Medina v. City and County of Denver*, 960 F.2d 1493 (10th Cir. 1992)................32

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ..................................................................1

*Monell v. New York City Dept. of Social Services,* 436 U.S. 658 (1978)............1, 36

*Moore v. City of Wynnewood*, 57 F.3d 924 (10th Cir. 1995) ..................................36

*Morris v. Noe*, 672 F.3d 1185 (10th Cir. 2012) ......................................................34

*Pearson v. Callahan*, 555 U.S. 223 (2009)................................................ 13, 14, 15

*Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004)...............................................32

*Price-Cornelison v. Brooks*, 524 F.3d 1103 (10th Cir. 2008) ...................................1

*Rieck v. Jensen*, 651 F.3d 1188 (10th Cir. 2011).....................................................36

*Saucier v. Katz*, 533 U.S. 194 (2001) .............................................................. 16, 32

*Singer v. Wadman*, 595 F. Supp. 188 (D. Utah 1982) .............................................30

*Smart v. Holder*, 368 Fed. Appx. 591 (5th Cir. 2010)............................................35

*Spitzmiller v. Hawkins*, 183 F.3d 912 (8th Cir. 1999) ............................................35

*Stone v. City of Chicago*, 738 F.2d 896 (7th Cir. 1984) .................................. 27, 35

*Swanson v. Town of Mountain View*, 577 F.3d 1196 (10th Cir. 2009)....................14

*Swekel v. City of River Rouge*, 119 F.3d 1259 (6th Cir. 1997)................................35

*Thompson v. City of Lawrence*, 58 F.3d 1511 (10th Cir. 1995) ....................... 30, 31

*Toeves v. Reid*, -- F.3d --, 2012 WL 1085802 at *3 (10th Cir. Apr. 2, 2012) .........15

*Williams v. City and County of Denve*r, 99 F.3d 1009 (10th Cir. 1996) .................36

*Wilson v. Meeks*, 52 F.3d 1547 (10th Cir. 1995) ........................................ 16, 33, 34

## <u>Statutes</u>

28 U.S.C. § 1291 .......................................................................................................1

28 U.S.C. § 1331 .......................................................................................................1

42 U.S.C. § 1983 .......................................................................................................1

## <u>Rules</u>

Fed. R. Civ. P. 50(a).......................................................................................... 11, 19

Fed. R. Civ. P. 56(e)...............................................................................................19

## STATEMENT OF RELATED CASES

There are no prior or related appeals.

# I.    JURISDICTIONAL STATEMENT

This is an interlocutory appeal of the district court's denial of qualified immunity on Defendants-Appellant's Motion for Summary Judgment. Lynch has asserted claims against the individual Defendants pursuant to 42 U.S.C. § 1983 for the alleged violation of his right of access to courts and against the City and County of Denver ("Denver") based upon *Monell v. New York City Dept. of Social Services,* 436 U.S. 658 (1978). [Aplt. App. at 17-19, ¶ 18-29]. Thus, the district court has jurisdiction over such claims pursuant to 28 U.S.C. § 1331. The district court's denial of the summary judgment motion is an immediately appealable final collateral order since the qualified immunity issue turns on a question of law; therefore, this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Cortez v. McCauley*, 478 F.3d 1108, 1112 (10th Cir. 2007); *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1108 (10th Cir. 2008). The City & County of Denver joins in the appeal requesting that this Court exercise pendent jurisdiction over Lynch's municipal liability claim because the claim is inextricably intertwined with the qualified immunity issue.

The district court's order was entered on May 24, 2012. [Aplt. App. at 322-35]. The notice of appeal was timely filed in the district court on May 29, 2012. [Aplt. App. at 336-38].

## II.    ISSUES PRESENTED FOR REVIEW

A.    Whether the District Court erroneously determined that a cognizable constitutional violation of Lynch's right of access to the courts exists under the circumstances of this case;

B.    Whether the District Court erroneously determined that the denial of access claim Lynch has asserted against Barrett, Morelock, and Kenfield was clearly established; and

C.    If Lynch has failed to establish that the individual officers violated his constitutional right of access to the courts under the circumstances of this case, whether his municipal liability claim against Denver is also subject to dismissal.

## III.    STATEMENT OF THE CASE

On February 25, 2009, in Case No. 09-cv-00405-JLK ("*Lynch I*"), Lynch initially brought suit against Denver police officers, Adam Barrett, Abigail [sic] Dorn, Justin Kennedy, and "John Doe" defendants, contending that one or more of the defendants or unidentified police officers either used excessive force against him during his arrest and/or knew who allegedly used force against him and intentionally failed to reveal the identities of the officer or officers involved in his arrest thereby interfering with his right to access the courts.

2

On September 29, 2009, Lynch filed a Motion seeking leave to amend his complaint to add Sergeant Stephen Kenfield, Officer Erik Golladay, and Officer Michael Morelock as defendants, contending that he was "beaten up by up to six officers during his arrest" and that through disclosures and discovery he was able to identify these previously unnamed "John Does". As part of the Motion, Lynch also moved to voluntarily dismiss his claims against Officers Dorn and Kennedy based upon his determination that neither used forced against him during his arrest or knew the identities of the officers who allegedly used force against him.

On March 22, 2010, the officers moved for summary judgment, which was granted in part when the court arrived at its own conclusion that the right of access claim was not ripe for review. A copy of the court's order is attached to this Brief as Exhibit 1.

A jury trial was commenced on Lynch's excessive force and failure to intervene claims. On February 3, 2011, after Lynch rested his case and upon the officers' motion, the district court entered judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) due to Lynch's failure to prove that any of the officers used force against him or failed to intervene in any alleged use of force. Plaintiff did not appeal the judgment. A copy of the transcript of the court's Rule 50 ruling is attached to this Brief as Exhibit 2.

On April 27, 2011, Mr. Lynch initiated the pending lawsuit, claiming that Officers Barrett, Morelock, Kenfield and Dorn interfered with his right of access to the court by allegedly failing to identify the police officer or officers who arrested him and allegedly used excessive force during the arrest. The officers' alleged failure to identify, which Mr. Lynch contends constituted a "cover-up," occurred approximately eight months after his arrest when Mr. Lynch filed a complaint with Denver's Office of the Independent Monitor and the officers informed the internal affairs investigator that they were at the scene of his arrest but were unable to recall who arrested Lynch and did not see any force used during the arrest.

In addition to his claims against the individual officers, Lynch has asserted a claim of municipal liability against Denver, claiming that it has an official policy or custom of allowing its police officers to interfere with a citizen's right of access to the court by failing to properly investigate or discipline its officers for allegedly "covering up" facts when excessive force is used during an arrest.

On June 8, 2011, Defendants-Appellants filed a Motion to Dismiss Mr. Lynch's complaint, contending, *inter alia*, that the individual officers were entitled to qualified immunity because Mr. Lynch failed to allege a plausible claim for the violation of his right of access to the courts and, as a result, Mr. Lynch's claim against Denver also failed. The district court denied the Motion in its entirety on

4

February 16, 2012. A copy of the transcript of the district court's order denying the Motion to Dismiss is attached as Exhibit 3. As a result, on March 1, 2012, Defendants-Appellants timely filed a Motion for Summary Judgment on all of Mr. Lynch's claims.

On May 24, 2012, the district court issued a written order granting the summary judgment motion as to Officer Dorn and denying the motion as to remaining Defendants-Appellants. A copy of this order is attached as Exhibit 4.

## IV.   STATEMENT OF FACTS

1.     Around midnight on March 29, 2008, Nick Lynch initiated a physical altercation with Justin Henkenberns outside a nightclub in downtown Denver. [Aplt. App. at 120, p.1; Aplt. App. at 135-36, p.23, l. 8-25; p.24, l. 1-9; 18-25; p.25-26, 1-25, 1-20]. After hitting and knocking Henkenberns to the ground, Lynch fled the scene on foot. [Aplt. App. at 120, p.1; Aplt. App. at 136-38, p.26, l. 18-20, p.38-39, l. 21-25, 1-6; p.41, l. 15-23; p.43, 1-25].

2.     After witnessing Henkenberns trying to flag down a police officer and noticing an officer heading towards him, Lynch attempted to evade the police by running down an alley, jumping over a fence, and hiding in the dark in some bushes by a building. [Aplt. App. at 120, p.1; Aplt. App. at 138-41, 147, p.45-46, l.

23-25, 1-21; p.47-48, l. 16-25, 11-20; p.50-51, l. 25, 1-4; p.52, l. 19-23, p.55-56, l. 16-25, 1, 8-22; p.57, l. 8-19; p. 81, l. 12-20].

3.      Lynch noticed at least five unidentified police officers enter the fenced area where he was hiding and Officers Barrett, Morelock, Kenfield, and Dorn also recall seeing several officers near the bushes prior to Lynch's arrest. [Aplt. App. at 142, p.60-61, l. 24-25, 1-4; Aplt. App. at 155, ¶ 5; Aplt. App. at 164-65, 167; p. 17-18, l. 3-25, 1-24; p.21, l. 12-22; p.31, l. 2-8].

4.      Lynch claims that when he saw the officers he stood up from behind the bushes and an officer grabbed and tripped him, causing him to fall face first into the bushes. As he was being handcuffed, Lynch claims another officer used an object to repeatedly hit him on the back side of his left leg and hit his left ankle once or twice. [Aplt. App. at 142-47, p.58, l. 3-13; p.59-61, l. 17-25, 1-25, 1-4; p. 62-64, l. 10-25, 18-25, 1-3; p.65-66, l. 11-25, 1; p.67-68, l. 23-25, 1-4; 13-22; p. 69, l. 17-22; p. 71, l. 16-23; p. 72-73, l. 13-25, 1-6, 25; p. 74-75, l. 1-25, 1-14; p. 80-81, l. 12 -25, 1-5].

5.      The entire episode of Lynch being taken to the ground and one or more officers allegedly striking him occurred within 15-30 seconds. [Aplt. App. at 116-17, p.6-7, l. 16-25, 1-4; p.8, l. 6-10; Aplt. App. at 144-45, p.68-71, l. 13-25, 1-25, 1-25, 1-23].

6

6.      Prior to Lynch's arrest, Barrett crossed over the fence with Officer Morelock, and he pulled out his gun. [Aplt. App. at 113, p.31, l. 7-8; Aplt. App. at 162, p.30, l. 14-19]. As he was walking toward the bushes, he saw Lynch start to stand up and then several officers rush the bushes and took Lynch down to the ground. [Aplt. App. at 162, p.30, l. 14-23].

7.      An officer's decision to take a suspect to the ground before handcuffing is a matter of judgment based upon the circumstances presented. [Aplt. App. at 116, p. 6, l. 16-22].

8.      At the time Barrett saw the officers rush the bush, he was at least 20 feet away and looking down the sights of his gun, which is "not a matter in which one would expect peripheral vision to be able to do anything at all." [Aplt. App. at 113, p.3, 7-11].

9.      Barrett did not personally participate or fail to intervene in the alleged use of force. [Aplt. App. at 113, p.3, l. 12-17]. Barrett did not witness the arrest and he did not see any officer strike Lynch. [Aplt. App. at 167, p.32, l. 4-25; p.33, l. 1-3, 17-25; Aplt. App. at 170, ¶ 3]. Rather, once he saw the officers take Lynch to the ground, Barrett holstered his gun and began to look for a way out of the fenced-in area. [Aplt. App. at 162, p.32-33, l. 13-25, 1-9].

10.    Whether Officer Morelock had anything to do with the use of force is "pure speculation" on Lynch's part and Morelock did not fail to intervene in the alleged use of force. [Aplt. App. at 113, p. 3, l. 12-19]. By the time Morelock reached the area where the other officers were located, Lynch was already handcuffed and standing. [Aplt. App. at 158, ¶¶ 5-6]. Morelock did not participate in or witness Lynch's arrest and he did not see anyone strike Lynch. [Aplt. App. at 158, ¶ 7].

11.    Sergeant Kenfield did not personally participate in the alleged use of unreasonable force nor did he fail to intervene in the use of such force. [Aplt. App. at 113, p.3, l. 12-17]. Kenfield did not participate in the arrest, and he did not see any officer strike Lynch. [Aplt. App. at 155, ¶ 6]. Kenfield's observations led him to conclude that Lynch's arrest was routine; therefore, neither an investigation nor a use of force report was completed. [Aplt. App. at 155, ¶¶ 7-8].

12.    Lynch did not appear to have physical injuries after his arrest, and he did not complain to any officer that he had been injured, including the officers who transported him to jail. [Aplt. App. at 150, p.104, l. 20-23; p.105, l. 13-23; Aplt. App. at 155, ¶ 7; Aplt. App. at 158, ¶¶ 8-9; Aplt. App. at 166-68, p.22, l. 6-8; p.31, l. 2-13; p.38, l. 13-24; Aplt. App. at 170, ¶ 4].   Additionally, when Lynch was

booked at the jail, he specifically denied sustaining any injury during his arrest. [Aplt. App. at 150, p.104, l. 20-23; p.105, l. 13-23].

13.    If Lynch had any apparent physical injury or if Lynch complained about being injured, Kenfield would have conducted an investigation into the circumstances surrounding his arrest and completed a use of force report. [Aplt. App. at 155, ¶ 7].

14.    Almost eight months after the date of his arrest, Lynch filed a complaint with Denver's Office of the Independent Monitor alleging that one or more police officers used excessive force against him. [Aplt. App. at 149-50, p. 91, l. 18-20; p. 102, l. 1-4]. An internal affairs ("IA") investigation was initiated; however, the almost eight month delay impaired Denver's ability to conduct a complete investigation into Lynch's claims. [Aplt. App. at 173-80, p.15, l. 1-12; p.26-28, l. 6-25, 1-25, 1-17; p.31, l. 2-6, 23-25; p.32, l. 1-13, 18 - 25; p.33, l. 1-4; p. 34, l. 3-8; p.35, l. 11-17; p.39, l. 18-21; p.42, l. 2-9; p.43, l. 9-18; p.65, l. 14-20].

15.    During his IA interview, Lynch claimed that he could "definitely" identify some of the officers because he "pretty much has a photographic memory," and when he was pulled up from the bushes he "could see everybody." [Aplt. App. at 198, *Clip 2 (Lynch 2)*, 00:01-00:18; *Clip 3 (Lynch 3),* 00:01-00:19]. When Lynch was shown three photo arrays, he identified four officers; however,

9

only one of the officers (Justin Kennedy) actually responded to the scene. [Aplt. App. at 184, ¶ 4; Aplt. App. at 198, *Clip 1, (Lynch 1),* 00:01-0041*; Clip 2, (Lynch 2),* 00:01-00:018].

16.    By the time Barrett, Morelock, Kenfield, and Dorn were interviewed by IA, none were able to recall the identities of any of the officers who arrested Lynch. [Aplt. App. at 156, ¶ 10; Aplt. App. at 159, ¶¶ 12-13; Aplt. App. at 168, p. 40-41, l. 13- 25, 1-2; Aplt. App. at 170, ¶¶ 5-8].

17.    The IA investigation found that Lynch's use of force allegations could not be proven or disproven. [Aplt. App. at 183-84, ¶¶ 2-6; Aplt. App. at 187, p. 13, l. 9-18].

18.    On February 25, 2009, in Case No. 09-cv-00405-JLK ("*Lynch I*"), Lynch brought suit against Barrett, Dorn, Justin Kennedy, and "John Does," contending that one or more of them either used excessive force against him or knew who did and intentionally failed to reveal the identities of the officer or officers thereby interfering with his right to access the courts.  [Aplt. App. at 85-86, p.1-2; Aplt. App. 120-21, p.1-2].

19.    The district court granted Lynch's motion to amend his complaint to add Morelock, Kenfield and another officer (Erik Golladay) as defendants and to voluntarily dismiss his claims against Kennedy and Dorn. [Aplt. App. at 86, p.2].

20.    The district court denied the individual officers' motion for summary judgment on Lynch's excessive force and failure to intervene claims. [Aplt. App. at 120-133, p.1-14]. A jury trial was commenced and on February 3, 2011, after Lynch rested his case and upon the officers' motion, the district court entered judgment as a matter of law against Lynch pursuant to Fed. R. Civ. P. 50(a), finding the evidence presented demonstrated that any use of force "was over by the time any sort of conduct of (Kenfield, Barrett and Morelock) was involved in any way. . . . " [Aplt. App. at 118, p.8, l. 18-21].

21.    Lynch has no evidence to establish that Barrett, Morelock, or Kenfield actually know and are intentionally concealing the identity of the officer or officers who allegedly used force against him; rather he believes that they must have such knowledge simply because they were at the scene. [Aplt. App. at 148, 151-53, p.86-87, l. 14-25, 2-19; p.144-46, 4-25, 1-25, 1-12; p.152, l. 4-11; p.153, l. 2-13; Aplt. App. at 192-94, p.81-82, l. 23-25, 1-10; p.83, l. 6-15; p.85-87, l. 14-25, 1-25, 1-3; p.89, l. 5-17].

## V.    <u>SUMMARY OF ARGUMENT</u>

The Tenth Circuit has not yet determined whether a cognizable right of access claim may arise from an alleged cover-up by police officers and if so, what must be proven to demonstrate a violation of such right. However, even assuming

11

for the purpose of this appeal that such a claim may exist, the circumstances present in this case do not show that any of the defendant officers violated Lynch's right of access to the courts because the evidence is not sufficient to demonstrate that any of the officers intentionally and in bad-faith concealed the identities of the officers who Lynch claims used excessive force against him. At best, the evidence shows that the defendant officers were in the vicinity of his arrest and by the time of the IA investigation, which took place over eight months after the date of the arrest, none of the officers could recall the identities of the arresting officers. Such evidence is insufficient to give rise to a reasonable inference that any of the defendant officers engaged in purposeful conduct with the intent to conceal the arresting officers identities and interfere with Lynch's right of access to the courts.

Lynch also failed to present any evidence of a conspiracy to cover-up the identities of the officers. As a result, the district court erred when it determined that Lynch met his burden of proving that the individual defendants violated his constitutional right of access to the courts and were not entitled to qualified immunity. Because Lynch has failed to demonstrate that any of the defendant officers violated a constitutional right, Denver should also be entitled to summary judgment. As a result, Denver is requesting that this Court exercise pendant jurisdiction over the municipal liability claim Lynch has asserted against it and

12

reverse the district court's order denying summary judgment with respect to Denver.

Further, even if a constitutional violation for the denial of access to courts could somehow arise from the circumstances of his case, the district court nevertheless erred by failing enter summary judgment against Lynch because the law concerning the right of access claim Lynch is attempting to allege in this case is not clearly established. This also entitles the officers to qualified immunity. Thus, for all of these reasons, the district court's order denying Defendants-Appellants Motion for Summary Judgment should be reversed.

## VI.  <u>ARGUMENT</u>

### A.    Standard of Review

The district court's denial of qualified immunity is a question of law which this Court reviews *de novo*. *Cortez*, 478 F.3d at 1114 (denial of summary judgment based upon governmental immunity reviewed *de novo*). When a defendant raises the issue of qualified immunity, the burden shifts to the plaintiff to meet a heavy two-part burden of showing: (1) the defendant violated a constitutional right; and (2) the constitutional right was clearly established. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009)). A plaintiff's failure to meet either element requires reversal of the district

13

court's order. *See Swanson v. Town of Mountain View*, 577 F.3d 1196, 1199 (10th Cir. 2009).

"[T]he court has discretion to determine 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Id*. (quoting *Pearson*, 555 U.S. at 236). While the "regular" policy may be to avoid making a determination regarding whether a particular right exists, such a policy "sometimes does not fit the qualified immunity situation because it threatens to leave standards of official conduct permanently in limbo." *Camreta v. Greene*, -- U.S. --. 131 S.Ct. 2020, 2031 (2011). As the Supreme Court recognized:

> [T]here are cases in which there would be little if any conservation of judicial resources to be had by beginning and ending with a discussion of the 'clearly established' prong. '[I]t often may be difficult to decide whether a right is clearly established without deciding precisely what the existing constitutional right happens to be.'

*Pearson*, 555 U.S. at 236 (quoting *Lyons v. Xenia*, 417 F.3d 565, 581 (6th Cir. 2005) (Sutton, J., concurring)). Accordingly, determining whether a constitutional right exists before examining whether the right was clearly established "is sometimes beneficial to clarify the legal standards governing public officials." *Id*.

The circumstances presented by this appeal make it advantageous for this Court to exercise its discretion to "avoid avoidance" of the constitutional issue

14

presented because such a determination will best facilitate the fair and efficient disposition of this case. *See*, *e.g.*, *Pearson*, 555 U.S. at 236; *see also Toeves v. Reid*, -- F.3d --, 2012 WL 1085802 at *3 (10th Cir. Apr. 2, 2012).

> **B.    The District Court Erred by Finding that Lynch met his Burden of Presenting Facts Sufficient to Show that the Officers Violated his Constitutional Right of Access to the Courts**

Different constitutional sources have been recognized for the right of access to the courts, including the First Amendment Petition Clause and the Due Process Clause of the Fifth and Fourteenth Amendments. *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002); *see also McKay v. Hammock*, 730 F.2d 1367, 1375 (10th Cir. 1984). However, the parameters of the conduct which the right may encompass and the scope of the right remain nebulous at best. For example, in *Harbury*, the Supreme Court assumed without deciding the correctness of appellate court decisions that an "access-to-the-courts" claim existed and then discussed two categories under which such claims might fall. *Jennings v. City of Stillwater*, 383 F.3d 1199, 1208 (10th Cir. 2004) (citing *Harbury*, 536 U.S. at 412-22). The first category includes "forward looking claims," which may occur where official conduct frustrates the plaintiff's ability to bring a suit at the present time. *Id*. (citing *Harbury*, 536 U.S. at 413). A forward claim is not at issue in this case. [Aplt. App. at 50, p.5]. The second category, "backwards looking claims," may

arise when a specific claim allegedly "cannot be tried (or tried with all the evidence) [because past official action] caused the loss or inadequate settlement of a meritorious case." *Id*. (quoting *Harbury*, 536 U.S. at 413-14). In this case, Lynch is alleging the existence of a "backwards looking" claim.

In *Wilson v. Meeks*, 52 F.3d 1547 (10th Cir. 1995),[1] this court considered the viability of a denial of access claim premised upon allegations that officers used excessive force and failed to conduct a proper investigation, lost or destroyed evidence, and set up a "code of silence" to cover-up their misconduct. In reaching its decision, the *Wilson* court recognized that while other circuits may have recognized a cause of action for a police cover-up, the Tenth Circuit had not. *Id*. at 1555-58.

In *Jennings*, this court considered whether the plaintiff stated a cognizable denial of access claim based upon destruction of evidence and various investigative omissions and irregularities. *Jennings*, 383 F.3d at 1207. Noting that *Wilson* could be read as simply holding that the conduct at issue did not violate clearly established rights, this court recognized that the holding "strongly suggests that a police cover-up does not give rise to a constitutional claim of denial of access to courts in this Circuit." *Id*. at 1208. Ultimately, this court assumed rather than

---

[1] abrogated on other grounds by *Saucier v. Katz*, 533 U.S. 194 (2001).

deciding the legal viability of a backwards looking denial of access claim because the plaintiff's claim failed to meet the standards discussed in *Harbury*. *Id*. at 1209.

One week after *Jennings*, in an unpublished decision in *Donahue v. Hoey*, 109 Fed. Appx. 340 (10th Cir. 2004), this court considered whether alleged improprieties during a police investigation stated a cognizable denial of access claim. The court concluded that under the circumstances of the case the plaintiff failed to establish an actionable denial of access claim. *Id*. at 356. However, before reaching this decision, the court stated two principles: (1) "intentional, bad-faith destruction or concealment of evidence that burdens a plaintiff's ability to access the courts is an unconstitutional denial or access," and (2) mere negligence will not support a denial of access claim. *Id*. at 356-57.

Regardless of the apparent conflict in these cases, even if it is presumed for the purpose of this appeal that certain circumstances may exist under which a plaintiff may establish a cognizable right of access claim based upon a police officer's intentional, bad faith cover-up of excessive force, Lynch has failed to show that such circumstances exist in this case.

1.    <u>The evidence is not sufficient to demonstrate Barrett, Morelock or Kenfield personally participated in an intentional cover-up</u>

Evidence of alleged personal participation in an alleged constitutional violation is an essential element of a § 1983 claim. *Jenkins v. Wood*, 81 F.3d 988,

994 (10th Cir. 1996). Moreover, cases addressing the circumstances under which a denial of access claim based upon a cover-up might arise have recognized that evidence of intentional and bad faith conduct on the part of the defendant is also required. *See Harbury,* 536 U.S. at 414-15 (2002); *Donahue,* 109 Fed. Appx. at 357.

The mere fact that Barrett, Morelock, and Kenfield were present at the scene of Lynch's arrest does not demonstrate the personal participation necessary to give rise to an actionable § 1983 right of access claim based upon an alleged intentional cover-up. *See Jenkins*, 81 F.3d 994 (agent's mere presence in home at time of alleged constitutional deprivations was not sufficient basis to establish personal participation necessary to impose liability under § 1983); *Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008) (overturning district court's conclusion that supervisory liability could be imposed based upon supervising officers vicinity to arrest and "the persistent obfuscation of the identities of the arresting officers"). Rather, to survive summary judgment, Lynch was required to present evidence sufficient to raise a genuine issue of material fact concerning each officer's personal participation in an intentional, bad-faith cover-up to hide the identities of the officers who allegedly used excessive force against him. The district court found that Lynch presented such evidence as to all officers except Dorn; however,

18

a review of the record reveals that the evidence concerning the remaining three officers' alleged involvement in a cover-up is just as speculative as the evidence concerning Officer Dorn. *See*, *e.g.*, *Marcus v. McCollum*, 394 F.3d 813, 821 n.8 (10th Cir. 2004) (summary judgment analysis should consider all relevant, undisputed facts); *Bones v. Honeywell Int'l Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (unsubstantiated allegations based upon speculation, conjecture, or surmise cannot defeat summary judgment). *see also* Fed. R. Civ. P. 56(e) (when a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion"). Thus, summary judgment should have been entered against Lynch on his right of access claim.

In reaching its conclusion that genuine issues of material fact existed concerning whether Barrett, Morelock, and Kenfield personally participated in an intentional cover-up with the purpose of preventing Lynch from discovering the identities of the officers who allegedly used force against him, the district court gave no consideration to Lynch's own description of the incident and ignored a majority of the relevant material undisputed facts in the record without any explanation. The district court also inexplicably failed to consider the findings the district court made in *Lynch I* at the time judgment pursuant to Fed. R. Civ. P.

19

50(a) was entered, even though such findings specifically addressed what the evidence presented at trial established concerning each officer's conduct at the time of the alleged use of excessive force. However, when all of the relevant undisputed material facts are considered in light of Lynch's cover-up claim, the record confirms that the facts are insufficient to give rise to a cognizable denial of access claim against any of the officers based upon personal participation in an intentional cover-up.

        a.     *The evidence does not show an intentional cover-up at the time of Lynch's arrest*

It is undisputed that it was dark at the time of Lynch's arrest and the take down and alleged use of force occurred within 15-30 seconds. [Section IV, ¶¶ 2-5]. It is also undisputed that several officers in addition to Barrett, Morelock, Kenfield, and Dorn were present prior to Lynch's arrest [*Id.* at ¶ 3]. In fact, Lynch claims that at least five unidentified officers rushed toward the bushes and then he was taken to the ground, face first. [*Id.*]. Thus, by his own admission Lynch does not know what Barrett, Morelock, and Kenfield were doing when the additional five officers rushed the bushes, and the record is devoid of any evidence to suggest that from their various locations Barrett, Morelock, or Kenfield would have been able to see what was happening regardless of the darkness and the potential obstruction of their view by the five officers, especially since Lynch was lying on the ground

at the time. Even Lynch's friends who claimed to have witnessed an officer using a beating motion when Lynch was on the ground did not claim to have been in the same position as Barrett, Morelock, or Kenfield, nor did they claim to have seen any officers watching what was happening by the bushes. [Aplt. App. at 220, ¶ 2].

Additionally, after his arrest, Lynch did not appear to be injured and he did not complain of any injury at the scene or when he was booked at the jail. [Sect. IV, ¶ 12]. As a result, there was no failure or refusal to provide medical treatment and the facts do not suggest that the circumstances surrounding his arrest required an investigation or the completion of a use of force report.

In fact, Lynch does not claim that any of the officers failed to properly document evidence or made a false report regarding his arrest. Indeed, under the circumstances, Lynch could not substantiate such a claim because Barrett, Morelock, and Kenfield were not constitutionally obligated to preserve the identities of the arresting officers by writing their names down in some type of report. Moreover, even though he admittedly ran from the police, Lynch was only charged with assaulting Henberkens. Thus, the charge itself also provides no basis from which it could be inferred that a cover-up was taking place.

There has also been no showing that any of the officers failed to cooperate in the IA investigation. Rather, Lynch's claim of intentional, bad-faith concealment is

based entirely on the fact that during the IA investigation, the officers stated that they were unable to recall the identities of the officers who were involved in the arrest.

However, the district court failed to give any consideration to the record as a whole before determining that the evidence Lynch presented was sufficient to demonstrate that the officers personally participated in a cover-up. Rather, the district court determined that because the officers may have seen excessive force being used, regardless of whether the evidence showed that they actually witnessed such conduct, this along was sufficient to establish the existence of a cover-up.

For example, the district court found that a factual question existed concerning Officer Barrett's alleged participation in a cover-up to conceal the identities of the arresting officers by solely relying upon a partial excerpt from Barrett's deposition testimony during which Barrett testified that after he climbed over the fence and began walking toward the bushes (with his gun drawn), he saw Lynch start to stand up and several officers rush the bush and take Lynch down. [Aplt. App. at 326, p.6]. However, Barrett also testified that he did not "remain in that position for the entire time that Mr. Lynch was being brought into custody" because he "holstered up" as soon as the officers got into the bushes and began walking around to look for a way out of the fenced in area. [Section IV, ¶¶ 6-7].

Therefore, for at least a portion of the 15-30 second period of time when Lynch claims an officer was hitting him, it is undisputed that Barrett was focusing his attention on figuring out how they could get out of the fenced in area.

Additionally, Barrett submitted an uncontroverted affidavit confirming that he did not see any officer strike Lynch, he did not see Lynch being handcuffed, he did not notice any physical injuries to Lynch after his arrest, and Lynch did not complain to him of any injury. [Section IV, ¶¶ 7-9]. Finally, in *Lynch I* the district court found that the evidence presented during the trial showed that after Barrett crossed over the fence he was at least 20 feet away from the hedge [where Plaintiff was hiding] and looking down the sights of his gun, which is "not a matter in which one would expect peripheral vision to be able to do anything at all." [*Id.*]. These undisputed facts, when viewed in their totality, even when considered in the light most favorable to Lynch, do not give rise to a reasonable inference that Officer Barrett engaged in purposeful conduct to cover-up the identities of the officers who arrested Lynch.

With respect to Officer Morelock, the district court found that an issue of fact existed concerning his personal participation in a cover-up merely because Morelock testified that he ran toward the bushes after he got over the fence. [Aplt. App. at 326, p.6]. Therefore, the court concluded that at least "some evidence"

23

existed "that he was in a position to have observed the arrest, or at least, who participated in it." [*Id*.] However, this finding was made without any consideration given to Lynch's failure to demonstrate that even in the dark, Morelock should have been able to see what at least five officers were doing during the 15 – 30 second period of time Lynch was on the ground. [Section IV, ¶¶ 3-5]. The finding was also made without giving any consideration to Morelock's uncontradicted testimony that he did not see any force being used as he was running toward the bushes and by the time he reached the bushes Lynch was already in handcuffs. [*Id*. at ¶ 10]. It is also undisputed that Morelock does not know who handcuffed Lynch, and he had no reason to believe that Lynch had been injured during the arrest. [*Id*.] In the absence of admissible evidence which contradicts this testimony, there are no facts from which a cover-up may be reasonably inferred with respect to Officer Morelock.

Finally, the only evidence upon which the district court relied when determining that a question of fact existed concerning whether Kenfield attempted to cover-up the force allegedly used during Lynch's arrest was the fact that he was "in the near vicinity of the arrest when it happened and saw which officers were present." [Aplt. App. at 327, p.7]. Certainly, such facts, without more, do not give rise to a reasonable inference that Kenfield actually witnessed any officer use force

24

against Lynch and/or personally participated in a cover-up to conceal the identities of such officers. Rather, it remains undisputed that while Kenfield may have seen several officers present in the fenced-in area as he was climbing over the fence, he did not see Lynch prior to his arrest, and he did not participate in or witness the arrest. [Section IV, ¶ 11].

Further, after the arrest Kenfield did not personally observe any physical injuries to Lynch and Lynch did not complain to him that he had been injured. [Section IV, ¶¶ 12]. Therefore, because he did see any use of force, Kenfield concluded that the arrest was routine and no investigation was conducted into the arrest. [*Id*. at ¶ 13]. Without any facts to demonstrate that Kenfield actually knew that force had been used and he intentionally failed to conduct an investigation and complete a use of force report, Lynch's claim that Kenfield personally participated in a cover-up of the identities of the officers who arrested him is nothing but pure speculation.

b.    *The evidence does not show an intentional cover-up during the IA investigation*

Even when viewed in conjunction with the IA investigation, the facts relied upon by the district court are not sufficient to give rise to an inference that the officers purposefully engaged in conduct to conceal the identities of the arresting officers. None of the officers, including Dorn who the court dismissed from this

25

case, claim that they did not ever know the identity of any of officers who were present at the time of Lynch's arrest. However, as noted above, the officers were not constitutionally required to document the identities of the officers who were present to ensure that their memories as to who may have effectuated the arrest were preserved. Moreover, there is no evidence that the officers who arrested Lynch were even assigned to the same district as Barrett, Morelock, Kenfield, and Dorn and there is no evidence that any of the officers had any discussions at the scene about the circumstances surrounding Lynch's arrest or at any time prior to the IA investigation. Thus, all the record establishes is that by the time of the internal affairs investigation, *which was more than eight months after the arrest occurred*, the officers could no longer recall the identities of the officers who arrested Lynch.

Without more, there cannot be a reasonable inference that Barrett, Morelock, or Kenfield are intentionally covering-up the identities of the officers who were involved in the arrest. This is especially true because it is undisputed that Lynch was solely responsible for the delay in the investigation, not the officers. [Section IV, ¶¶ 12-14]. In fact, by the time he was interviewed by IA, even Lynch, who claimed that he had a "pretty good photographic memory" and would be able to recognize at least some of the officers, was only able to identify one officer who

responded to the scene and Lynch voluntarily dismissed this officer from his first lawsuit.  [Section IV, ¶¶ 15, 18-19].

Lynch's ability to prove that the officers failed to recall certain information several months after his arrest is quite different than showing that the officers engaged in purposeful conduct to actively conceal the identity of the officers who made the arrest. In fact, Lynch's ability to show that intentional, bad-faith conduct might be inferred from the officers claim that they could no longer recall the identities of the arresting officers is substantially undermined due to Lynch's decision to intentionally conceal his alleged injuries and claim that excessive force had been used against him for over eight months.

If the arrest had occurred in a well-lit visible area, if Lynch appeared to have been injured after his arrest, or if he had reported being injured at the scene or even a reasonable time after his arrest, the inferences which might arise from the facts of this case might be very different. *See, e.g., Bell v. City of Milwaukee*,746 F.2d 1205 (7th Cir. 1984) (facts sufficient to demonstrate denial of access claim after officer revealed several years after victim was shot and killed that he conspired with another officer to plant evidence to cover-up the facts of the shooting thereby depriving the estate of the ability to timely bring suit); *Stone v. City of Chicago*, 738 F.2d 896, 900 (7th Cir. 1984) (evidence which included testimony that the

defendant officers (1) were seen huddling together at the intersection conversing after the accident and use of force occurred, (2) omitted relevant information from official police reports, and (3) failed to take the names of witnesses who may have seen the use of excessive force was sufficient to support jury's finding that officers conspired to cover-up the use of excessive force). However, such facts are not present in this case. As a result, because the evidence is not sufficient to give rise to a plausible claim that any of the officers intentionally and in bad-faith participated in a cover-up to hide the identities of the officers who arrested Lynch, the district court erred when it determined that a question of fact existed concerning whether the officers violated Lynch's right of access to the courts.

2.     <u>Lynch has not demonstrated that Barrett, Morelock, or Kenfield actually interfered with his right of access to the courts</u>

In its order, the district court also failed to consider whether under the specific facts of this case Lynch demonstrated that any of the officers actually interfered with his right of access to the courts. [Aplt. App. at 324-28, p.4-8]. While the constitutional right of access may protect an individual's right to physically access the court system and ensures that the access is "adequate, effective and meaningful," it does not include the right to win at trial. *See Bounds v. Smith*, 430 U.S. 817, 822 (1977); *Harbury*, 536 U.S. at 414-15; *Christensen v. Ward*, 916 F.2d 1462, 1472 (10th Cir. 1990) (Constitution guarantees access not

success). Therefore, Lynch's inability to survive judgment as a matter of law after he rested his case at trial does not automatically demonstrate that his right of access was not adequate, effective, and meaningful. However, other than the judgment entered against him, Lynch presented absolutely no evidence to prove that his right of access in *Lynch I* was actually denied. In fact, the record demonstrates the contrary since Lynch: (1) had sufficient facts to timely file a complaint based upon the alleged force used against him, (2) obtained additional facts during discovery sufficient to amend his complaint to add additional officers as defendants (including Morelock and Kenfield) and voluntarily dismiss others, (3) presented evidence establishing the existence of genuine issues of material facts sufficient to survive the entry of summary judgment in favor of Barrett, Kenfield, and Morelock (and one other officer) on his claims of excessive force and failure to intervene, and (4) proceeded to a full trial on the merits of his claims.

Further, the constitutionally protected right of access has not been construed so broadly as to routinely include the "right to know" information related to a claim. *See Lewis v. Casey*, 518 U.S. 343, 354-55 (1996) (right of access does not require state to enable a prisoner to discover grievances or litigate effectively once in court); *Ward*, 916 F.2d at 1472 (right of access focuses on procedural impediments to the exercise of existing rights); *Doe v. Schneider*, 443 F. Supp.

780, 787-88 (D. Kan. 1978) ("right to know" has nothing to do with the availability or functioning of the judicial machinery of the courts); *Singer v. Wadman*, 595 F. Supp. 188, 301 (D. Utah 1982) (defendants who allegedly conspired to "secrete" the identity of the arrest team to cover up the use of excessive force did not deprive plaintiffs of their constitutional right of access because "the right of access is not so broad as to include a 'right to know' the facts supporting a possible cause of action."). However, Lynch's cover-up claim is premised upon a right to know information, even though the information he is seeking (i.e., the identities of the officers who arrested him) would have in all likelihood been readily available had he not decided to intentionally delay providing notification of his claim that excessive force was used against him during his arrest for over eight months. As a result, because Lynch has failed to show that his access to courts was actually denied by the conduct of any of the officers, the district court's order must be reversed.

3.     No Evidence Exists to Support Lynch's Conspiracy Claim

The district court also did not address whether the evidence was sufficient to survive summary judgment on Lynch's conspiracy claim. [Aplt. App. at 324-28, p.4-8]. To succeed on such a claim, Lynch was required to prove both evidence of a conspiracy and deprivation of a constitutional right. *Thompson v. City of*

*Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995). Because Lynch failed to demonstrate any of the officers denied his access to the courts, his conspiracy claim also fails. *See Id*. Moreover, the record is devoid of facts sufficient to demonstrate any agreement or concerted action among any of the officers to cover-up the identities of the officers who arrested Lynch. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (bare assertions of conspiracy "amount to nothing more than a formulaic recitation of the elements of such a claim and do not state a cognizable conspiracy claim"); *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). Therefore, the district court also erred by failing to find that the officers are qualifiedly immune from Lynch's conspiracy claim.

### C. Lynch's Failure to Show the Law was Clearly Established also Requires Reversal of the District Court's Order

Even if the circumstances of this case could somehow be deemed sufficient to raise a genuine issues of material fact regarding whether Barrett, Morelock, or Kenfield violated Lynch's constitutional right of access to the courts, to overcome the defense of qualified immunity, Lynch must also show that the law is sufficiently clear so that the officers would have known that their conduct was unconstitutional. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be a

31

plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). However, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has not previously been held unlawful.'" *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Thus, although an exact factual correlation between existing law and the circumstances of the case at hand is not required, a showing must be made that courts agree that "certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented at hand" because the question of whether a right is clearly established must be answered "in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). That is, it must be clearly established that a governmental officer's conduct "*was unlawful in the situation he confronted.*" *Id.* (emphasis added). "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Fogarty*, 523 F.3d at 1161 (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)). However, the "salient question ... is whether the state of the law [at the time of the actions] gave respondents fair warning that their [conduct] was unconstitutional." *Hope*, 536 U.S. at 741.

In its order, the district court apparently only relied upon *Jennings* and *Donahue* to support its conclusion that "it would be clear to a reasonable police officer that intentional concealment of evidence of another officer's misconduct, the so-called conspiracy of silence, is unlawful." [Aplt. App. at 325, p.5; Aplt. App. at 352, p.15, l. 20-25; p. 16, l. 1-3, 20-25]. However, the district court was required to conduct more than a cursory analysis of this issue, especially since the Tenth Circuit has never expressly recognized a cause of action based upon an alleged cover-up, let alone an alleged "cover-up" based upon evidence establishing that police officers claimed eight months after an arrest to no longer recall the identities of the officers who actually made the arrest. *See Wilson*, 52 F.3d at 1557. Thus, the law must have given officers a fair understanding that if they are in the vicinity of an arrest, even if they do not participate in the arrest itself, the failure to take notes to preserve all relevant information concerning the arrest might provide the basis for a constitutional violation.

*Jennings* did not recognize a right of access claim based upon an alleged cover-up and the facts of the case are dissimilar to the facts of this case. *See Jennings*, 383 F.3d at 1207-08 (discussing viability of right of access claim premised upon destruction of rape kit and alleged various investigative omissions and irregularities). Moreover, to the extent that *Donahue* may have recognized the

33

possibility of a right of access claim based upon an intentional cover-up, "[a]n unpublished opinion 'provides little support for the notion that the law is clearly established on a given point.'" *Morris v. Noe*, 672 F.3d 1185, 1197 n.5 (quoting *Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007)). Further, like *Jennings*, *Donahue* involved the alleged destruction of photographs and stain samples by police officers. Thus, the facts of *Donahue* are also too dissimilar to demonstrate that it is clearly established that a claimed failure to recall the identities of police officers who allegedly used force during an arrest more than eight months after the date of the arrest might violate the constitutional right of access to the courts. *See Donahue*, 109 Fed. Appx. at 357-58.

As the court in *Wilson* recognized, other circuits have recognized a cause of action based upon a cover-up. *Wilson*, 52 F.3d at 1557. However, those cases are of limited usefulness here because the facts of such cases are not even arguably close to the circumstances Lynch has alleged. For example, in *Bell*, the court recognized a denial of access claim only after an officer revealed several years after the victim was shot and killed that he conspired with another officer to plant evidence to cover-up up the facts of the shooting. *See Bell*, 746 F.2d at 1215-225. Additionally, in *Stone*, the court found that the jury's finding of a cover-up was supported by the evidence in the record, which included testimony that the

34

defendant officers: (1) were seen huddling together at the intersection conversing after the accident and use of force occurred, (2) omitted relevant information from official police reports, and (3) failed to take the names of witnesses who may have seen the use of excessive force. *Stone*, 738 F.2d at 900 (7th Cir. 1984). The facts of this case pale in comparison to the facts upon which these two courts recognized a denial of access claim based upon a police cover-up.

Moreover, it is not even clearly established that an alleged cover-up, regardless of the circumstances, which does not interfere with the plaintiff's ability to file a complaint and proceed to trial, may nevertheless result in a violation of the constitutional right of access. For example, in the Fifth Circuit, a right of access claim is "implicated where the ability to file suit was delayed or blocked altogether and the court has specifically declined to extend the right "beyond one encompassing the right to institute suit." *Foster v. City of Jackson*, 28 F.3d 425, 430 n.7 (5th Cir. 1994); *see also Smart v. Holder*, 368 Fed. App. 591, 593 (5th Cir. 2010) (Fifth Circuit has not extended right of access claim beyond the ability to file suit). The Eighth Circuit has also acknowledged that the filing of two lawsuits undercuts the plaintiff's ability to establish denial of access claim. *Spitzmiller v. Hawkins*, 183 F.3d 912 (8th Cir. 1999); *see also Swekel v. City of River Rouge*, 119 F.3d 1259 (6th Cir. 1997) (constitutional right to access may be implicated if

cover-up resulted in delay of ability to file suit). Thus, a review of the case law demonstrates that nothing is "clearly established" with respect to the right of access claim Lynch has asserted in this case.  This also entitles the officers to qualified immunity.

### D.    Denver is also Entitled to Summary Judgment on Lynch's Municipal Liability Claim

This Court has the discretion to exercise pendent jurisdiction over Lynch's municipal liability claim because the legal issue presented by the qualified immunity appeal is inextricably intertwined with the municipal liability claim. *See Moore v. City of Wynnewood*, 57 F.3d 924, 927 (10th Cir. 1995); *Rieck v. Jensen*, 651 F.3d 1188, 1190-91 (10th Cir. 2011).  Because the record confirms that Lynch has failed to meet his burden of showing that the undisputed facts of this case demonstrate a cognizable right of access claim, his claim against Denver also fails as a matter of law. *See Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 407 (1997) (citing *Monell*, 436 U.S. at 694); *Williams v. City and County of Denver*, 99 F.3d 1009, 1018 (10th Cir. 1996). Thus, Denver respectfully requests that this Court exercise its pendent jurisdiction and also dismiss Lynch's municipal liability claim.

### VII.  <u>CONCLUSION</u>

Lynch has failed to establish that his right of access to the courts was violated by any of the officers in this case. Even assuming the validity of a

backwards looking right of access claim based upon a cover-up, the facts in this case are insufficient to show that any the officers personally participated in a cover-up to intentionally hide the identities of the officers who arrested Lynch for the purpose of denying him access to the courts. Moreover, the record establishes that Lynch had adequate, effective, and meaningful access to the court in the first case he filed, which proceeded all the way through trial. Lynch is also unable to demonstrate that the right he is claiming is clearly established. As a result, the officers are entitled to qualified immunity from Lynch's claims, and for the reasons stated above, Denver is also entitled to summary judgment. Therefore, Defendants-Appellants respectfully request that this Court reverse the district court's order in its entirety.

## VIII.  <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral argument is requested due to the importance of the constitutional issue raised by this appeal and to ensure that the issues are fully developed before this Court reaches its decision.

Respectfully submitted,

By:___s/ Wendy Shea_____
Wendy J. Shea, Assistant City Attorney
Stuart Shapiro, Assistant City Attorney
Office of City Attorney, Litigation Section
201 West Colfax Avenue, Dept. 1108
Denver, CO 80202-5332
Telephone: (720) 913-3112
Facsimile: 720-913-3182
E-mail: wendy.shea@denvergov.org
stuart.shapiro@denvergov.org
*Counsel for all Appellants*

Douglas Jewell, Esq.
BRUNO COLIN JEWELL & LOWE, P.C.
1999 Broadway, Suite 3100
Denver, CO 80202
Telephone: 303-831-1099
Facsimile: 303-831-1088
E-mails: djewell@brunolawyers.com
*Counsel for Appellants Adam Barrett and*
*Michael Morelock in their individual*
*capacities*

Reid J. Elkus, Esq.
ELKUS, SISSON & ROSENSTEIN, P.C.
501 S. Cherry Street, Suite 920
Denver, CO 80264
Telephone: 303-567-7981
Facsimile: 303-832-1188
E-mails: relkus@elkusandsisson.com
*Counsel for Appellant Sergeant Stephen*
*Kenfield in his individual capacity*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    [X]   this brief contains 8,810 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [   ]   this brief uses a monospaced typeface and contains [*state the number of lines of text*], excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because:

    [X]   this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2007 in 14 font size and Times New Roman, *or*

    [   ]   this brief has been prepared in a monospaced typeface using _____ with _____ .

By:   *s/ Wendy Shea*_____
Wendy J. Shea, Assistant City Attorney

39

## <u>CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS</u>

I hereby certify that a copy of the forgoing **APPELLANT'S OPENING BRIEF**, as submitted in Digital Form via the court's ECF system, is an exact copy of the written document filed with the Clerk and has been scanned for viruses with the McAfee VirusScan Enterprise, Version 8.7.0.129, updated January 4, 2012 and, according to the program, is free of viruses. In addition, I certify all required privacy redactions have been made.

By:   *s/ Wendy Shea*

Wendy J. Shea, Assistant City Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of July, 2012 the foregoing **APPELLANT'S OPENING BRIEF** was filed with the Clerk of the Court using the electronic filing system which will send notification of such filing to the following attorneys at the email addresses identified below or provided to the court:

Robert Mark Liechty, Esq.
rliechty@crossliechty.com

Douglas Jewell, Esq.
Sean T. Olson, Esq.
djewell@brunolawyers.com
sean@brunolawyers.com

Scott D. McLeod, Esq.
Reid J. Elkus, Esq.
Eric M. James, Esq.
relkus@elkusandsisson.com
ejames@elkusandsisson.com
smcleod@elkusandsisson.com


*s/ Wendy Shea*
Denver City Attorney's Office